IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| DR. TITILAYO ADETU, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. SAG-25-02348 |
| GRMC, INC, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Following the dismissal of his original Complaint, Plaintiff Dr. Titilayo Adetu ("Plaintiff") has filed an Amended Complaint against GRMC, Inc., d/b/a Garret Regional Medical Center ("GRMC"), asserting a claim pursuant to 42 U.S.C. § 1981 for race discrimination in the conditions of his employment. ECF 11-1. GRMC has again filed a motion to dismiss for failure to state a claim. ECF 14. Plaintiff opposed the motion, ECF 15, and GRMC filed a reply, ECF 16. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, the Motion will be granted and the amended complaint will be dismissed without prejudice.

**I.      FACTUAL BACKGROUND**

The facts below are derived from the Amended Complaint and taken in the light most favorable to Plaintiff, the non-moving party. In November, 2021, GRMC hired Plaintiff, who is an "African American of African national origin and background," on a three-year contract as a medical doctor in the Emergency Department. ECF 11-1 ¶¶ 4, 5. Of the three African American doctors employed in that department, Plaintiff was the only one to work full-time. *Id.* ¶ 14. GRMC had agreed to schedule Plaintiff in "block shifts," given that his residence was more than 200 miles from the facility. *Id.* ¶ 7. However, beginning in late 2021 and continuing into 2022, GRMC

1

"scheduled Plaintiff in a haphazard manner that departed from the block-shift arrangement that had been agreed upon." *Id.* ¶ 12.  The departure required him to travel more than 400 miles to work and spend over six hours driving for a single 12-hour shift. *Id.*

At least two white emergency physicians, Drs. Paul Miller and Joseph Goralski, maintained primary-care practices during weekdays and were scheduled primarily or exclusively for night shifts in the Emergency Department. *Id.* ¶ 13.

Non-physician staff under Plaintiff's supervision frequently bypassed him and took concerns directly to hospital administration. *Id.* ¶ 15. Plaintiff did not observe that pattern with respect to white physicians. *Id.*

On or about May 27, 2022, GMRC sent Plaintiff a letter raising questions and criticisms about care Plaintiff rendered during five patient encounters between February and May of 2022. *Id.* ¶ 17. The issues included failure to document a physical examination, failure to admit a patient who presented with tachycardia, delaying documentation in a stroke case, failure to timely order heparin and cardiology consultation in a chest pain case, and failure to timely diagnose COVID-19 in a patient. *Id.* ¶ 18. Plaintiff submitted a detailed response on June 25, 2022, explaining his clinical reasoning in each case and denying that his performance fell below the standard of care. *Id.* ¶¶ 19–20.

Because the haphazard scheduling continued, Plaintiff concluded that continued employment at GMRC was untenable. *Id.* ¶ 16. On July 13, 2022, Plaintiff emailed a resignation letter, providing ninety-days' notice and an effective date of November 1, 2022. *Id.*

During Plaintiff's shift on August 17, 2022, he experienced two separate disputes with nurses and nurse practitioners. *Id.* ¶¶ 21–23. On or about August 30, 2022, Plaintiff wrote to GRMC's Chief Medical Officer to describe the events, explain how the nurse practitioners and

nursing staff had endangered patient care, and express his intent to report the violations to the Maryland licensing authorities. *Id.* ¶ 24. The next day, August 31, 2022, GRMC removed Plaintiff from the Emergency Room schedule, essentially terminating his employment. *Id.* ¶ 25.

On September 9, 2022, GRMC told Plaintiff that it planned to investigate and hold a hearing regarding Plaintiff's patient care, "for the purpose of reporting [Plaintiff] to the Maryland Board of Physicians and the National Practitioners Data Bank." *Id.* ¶ 26. GRMC circulated a proposed amendment to its bylaws on September 14, 2022, which effectively permitted nurse practitioners to carry out the interventions that Plaintiff had complained about in August. *Id.* ¶ 27.

Although Plaintiff had intended to resign effective November 1, 2022, his resignation could not take effect while he was under formal investigation without triggering a mandatory adverse report to licensing authorities. *Id.* ¶ 28. Plaintiff therefore continued to be employed although he was not placed on the schedule. On November 30, 2022, GRMC's chief medical officer scheduled the hearing on the allegations against Plaintiff for March 28, 2023, stating that the hearing was intended to "result in a notification to the Maryland Board of Physicians." *Id.* ¶ 29. However, on March 16, 2023, GRMC cancelled the hearing because the Medical Executive Committee's review "did not result in any reportable action." *Id.* ¶ 30. GRMC released Plaintiff from the investigation in May, 2023. *Id.* ¶ 31. Because it takes four to six months to undergo the credentialing process for a new hospital, however, Plaintiff could not secure and begin new employment until December, 2023. *Id.* ¶ 32.

Dr. Miller, one of the white emergency physicians who maintains a separate primary-care practice, told Plaintiff that he "does not intubate patients." *Id.* ¶¶ 34–35. GRMC did not discipline Dr. Miller for his refusal to perform that critical procedure. *Id.* ¶¶ 35–36. Dr. Miller was supervised by the same authorities as Plaintiff. *Id.* ¶¶ 39–41.

## II.    LEGAL STANDARD

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); see also *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the

4

elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). A court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, "[a] court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

## III.    ANALYSIS

In dismissing Plaintiff's original complaint, this Court noted that "Conclusive allegations about being treated differently from persons of other races is not sufficient under Fourth Circuit law, without allegations establishing that the comparators were similarly situated." ECF 9 at 5 (citing *Lemon v. Myers Bigel, P.A.*, 985 F.3d 392, 399–400 ("Lemon's allegation that she was subject to a different short-term leave application process than the firm's white partners is by itself insufficient. Because in the absence of plausible allegations that, for example, these white partners

were similarly situated, such an allegation indicates only that she was treated differently, not that she was treated differently because of her race."); *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (finding assertions that Plaintiff was treated "differently than Caucasian physicians similarly situated" and that "minority physicians are scrutinized more harshly by [WakeMed] than are Caucasian physicians" did not suffice to state a § 1981 claim)). While Plaintiff's Amended Complaint adds additional detail regarding the comparators, it does not successfully establish that they were similarly situated to Plaintiff.

Even taking the allegations in the light most favorable to Plaintiff, Plaintiff has described white physicians who were not similarly situated to Plaintiff in terms of work status, schedules requested, or care complaints lodged. The primary comparator, Dr. Miller, is a part-time physician who maintains a primary care practice during the day and works only evenings. Plaintiff, by contrast, is a full-time emergency room physician. Plaintiff does not allege that Dr. Miller requested the same "block schedule" that he did, and the differences between a part-time and full-time schedule render Dr. Miller (or any other part-time physician) unsuitable as a comparator with respect to the scheduling requests. Similarly, Plaintiff's report that Dr. Miller expressed unwillingness to intubate is not comparable to the five patient care complaints lodged against Plaintiff. While Plaintiff speculates that a failure to intubate "potentially places patients at risk," ECF 11-2 ¶ 35, without an actual patient complaint, Dr. Miller is not similarly situated.

Accordingly, in the absence of any allegations describing direct or indirect evidence that Plaintiff received different treatment based on his race, Plaintiff's Amended Complaint still does not set forth a plausible claim and must be dismissed.

## IV.    CONCLUSION

For the reasons set forth above, GRMC's Motion to Dismiss, ECF 14, will be GRANTED and the Amended Complaint will be dismissed. Despite the fact that this is the second dismissal

and it appears unlikely Plaintiff has a sufficient factual basis to mount a viable discrimination claim, the case will again be dismissed without prejudice. Should Plaintiff wish to pursue the case further, he must seek leave to amend his claims within twenty-one days of this Memorandum Opinion and Order, in accordance with the Local Rules. A separate Order follows.

Dated:  April 6, 2026

_____/s/_____
Stephanie A. Gallagher
United States District Judge